UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN R. SHIELDS,                        )
                                        )
                Plaintiff,              )
        v.                              )        CIVIL ACTION
                                        )        NO. 10-10234-JGD
MICHAEL J. ASTRUE, Commissioner         )
of the Social Security Administration,  )
                                        )
                Defendant.              )

## MEMORANDUM OF DECISION AND ORDER ON
## CROSS-MOTIONS RELATING TO DENIAL OF
## SOCIAL SECURITY DISABILITY BENEFITS

March 30, 2011

DEIN, U.S.M.J.

## I.  INTRODUCTION

This is an action under sections 205(g) and 1631(c)(3) of the Social Security Act,

42 U.S.C. §§ 405(g) and 1383(c)(3) (2006), challenging the final decision of the

Commissioner of the Social Security Administration (the "Commissioner") denying the

claim of Plaintiff, John R. Shields, for Social Security Disability Insurance benefits.  This

matter is presently before the court on "Plaintiff's Motion for Judgment on the Pleadings"

(Docket No.14), and "Defendant's Motion for Order Affirming Decision of the

Commissioner" (Docket No. 16).  The issues raised by the parties' motions are whether

the finding of the Administrative Law Judge ("ALJ") that Plaintiff was not disabled was

supported by substantial evidence, and whether the ALJ properly evaluated the evidence

in the record.  For the reasons detailed below, this court finds that the ALJ's decision

should be affirmed. Therefore, Plaintiff's motion (Docket No. 14) is DENIED and the Defendant's motion (Docket No. 16) is ALLOWED.

## II.  **STATEMENT OF FACTS**[1]

### **Procedural History**

On May 23, 2007, Plaintiff filed an application for Social Security Disability Insurance ("SSD") benefits, alleging that he had been disabled beginning August 21, 2006 due to back pain caused by a large herniated disc at L4-5 which impacted on the S1 nerve root. (Tr. 85-87, 97). The claim was denied at the initial level of review on September 17, 2007 (Tr. 57-59), and then denied by a Federal Reviewing Official on June 19, 2008. (Tr. 47-54). On August 28, 2008, Shields filed a written request for a hearing before an ALJ, and the hearing took place on September 1, 2009. (Tr. 17-44, 63). At the hearing, Plaintiff requested a closed period of benefits, from August 22, 2006 to January 6, 2009, the date he had returned to work. (Tr. 8, 22-23). On September 30, 2009, the ALJ issued a decision affirming the denial of Plaintiff's application for benefits. (Tr. 5-16). The Decision Review Board selected Shields' claim for review (Tr. 5) and, on December 23, 2009, affirmed the ALJ's decision. (Tr. 1-3). Plaintiff has exhausted his available administrative remedies, and the case is now ripe for review under 42 U.S.C. § 405(g).

---

[1] References to the pages in the transcript of the record proceedings, filed as Docket No. 12, shall be cited as "Tr. __." The decision of the Administrative Law Judge ("ALJ") is cited as "Dec." and can be found beginning at Tr. 5.

## Plaintiff's Background

Shields was born in 1961.  (Tr. 21).  He is a graduate of Southeastern Regional Vocational Technical High School and has had no further formal education.  (Tr. 21).  He worked primarily in the construction field as a pipe layer since high school.  (Tr. 22, 30-31).  On November 27, 2004, when he was almost 44 years old, Plaintiff suffered a back injury while jumping over a trench at a construction site.  (Tr. 129).

Shields reported his subsequent work history slightly differently at various times in the application process.  Thus, in a Hearing Memorandum which was submitted as an exhibit to the ALJ, Shields reported that he was out of work for one week following the November 27th accident.  (Tr. 78).  He then "returned to light duty and was then laid off from January to March of 2005."  (Id.).  Subsequently, Shields "tried to return to work in March of 2005 but the back and left leg pain became so severe that he had to stop work on June 28, 2005."  (Tr. 79).  Shields further reported that on October 24, 2005, he went to work at Auto Zone "on a light duty basis" until the pain caused him to stop on August 21, 2006.  (Id.).  Shields was out of work until January 9, 2009, when he began working at Stop & Shop packing small packages of meat.  (Id.).[2]

In his testimony before the ALJ, Shields did not testify in the same detail.  Rather, he testified simply that he worked at Auto Zone from "October of 2004 [sic] until August 21 of 2006" stocking shelves and serving customers.  (See Tr. 31, 36-37).  In that position

---

[2]  In a "Written Statement on Behalf of John Shields to Support a Favorable Decision of Disability" dated October 1, 2009, Shields provided basically the same scenario but did not mention that he was laid off from January to March 2005.  (See Tr. 129).

he had to stand, which, he testified, caused him to suffer pain that radiated from his lower back to his toe. (Tr. 32). He testified further that he left Auto Zone on August 21, 2006 due to the pain. (Id.). On March 7, 2007, Plaintiff received a lump sum workers' compensation settlement of $57,500. (Tr. 26). He testified that, starting in January 2009, he began working 20-25 hours per week packing small packages of meat at Stop & Shop, a position that requires him to stand. (Tr. 23-24, 29). He remained so employed at the time of the hearing. According to Shields, he went back to work in 2009 because he needed the money, but nothing about his physical condition had changed. (Tr. 29).

Shields testified that from August of 2006 through January of 2009, he was unable to lift more than ten pounds, or stand for more than a couple of hours at a time. (Tr. 32-33). He was able to do light work around the house, including some vacuuming, tidying up and cleaning, but required assistance from his mother to complete his laundry and grocery shopping. (Tr. 34). To relieve the pain, he would take Tylenol or lay down. (Tr. 30, 33). He was able to drive for about 20 minutes at a time, and testified that he would visit with a friend. (Tr. 35). Additionally, according to the Plaintiff, his job packing meat at Stop & Shop requires him to stand. (Tr. 24). At no time while out of work did the Plaintiff consult with the Massachusetts Rehabilitation Commission or any other vocational rehabilitation agency. (Tr. 26).

### Plaintiff's Medical History

As noted above, Plaintiff injured his back on November 27, 2004. He was treated at Morton Hospital for his injuries on that day. (Tr. 100). There is no evidence of any subsequent treatment for a year, until October 2005, when Plaintiff came under the care of Dr. Mark Weiner, a neurologist.[3] (Tr. 12, 124). Dr. Weiner ordered an MRI on June 29, 2006 that revealed an L5-S1 disc extrusion impinging on the left S1 nerve root which, along with facet degeneration, resulted in "moderate central canal stenosis." (Tr. 133-34). There was also "small bilateral foraminal disc protrusions . . . without significant central canal nor foraminal stenosis" at L3-L4 and L4-L5. (Tr. 134). An EMG on August 9, 2006 confirmed "a proximal process affecting the left S1 root, with no evidence of active or chronic neurogenic changes in the left S1 myotome." (Tr. 155-56). A lumbar epidural injection was recommended. (Tr. 158).

On September 14, 2006, Dr. Weiner sent Plaintiff's counsel a letter in which he opined that Shields was totally disabled as a result of the accident on November 27, 2004. (Tr. 157-58). According to Dr. Weiner, Shields had stopped working in June 2005. (Tr. 157). The Doctor made no mention of the fact that Shields worked at Auto Zone from at least October 2005 through August 21, 2006.

Dr. Weiner's conclusions were as follows:

> **CONCLUSION**: Mr. John Shields suffered a lower back injury
> with left sciatica, causally related to an injury sustained at work

---

[3] At times, the ALJ incorrectly refers to Dr. Weiner as Dr. Werner, clearly a typographical error.

11/27/04.  He has positive objective clinical findings, which include positive left SLR and on presentation had an asymmetric depressed right ankle jerk compared to the left.  He was diagnosed with a severe left L5-S1 disc herniation (MRI).  The disc herniation has caused nerve damage (EMG).

TREATMENT:  In an attempt to try to avoid surgical intervention, an epidural injection has been ordered.  If this treatment is unsuccessful, surgical intervention will be required.

Mr. Shields, in my opinion, is totally disabled from gainful employment.  Diagnosis and disability are causally related to the injury sustained at work 11/27/04.

Mr. Shields has not as yet reached a medical end point.  Further treatment, including potential surgical intervention, will be required in the future.

(Tr. 158).  Shields' prognosis of recovery was deemed to be "uncertain at this time."  (Tr. 159).

According to the records before the ALJ, Shields did not return to Dr. Weiner for a follow up visit for three years - until July 29, 2009.  (Tr. 151).  As detailed below, Dr. Weiner found Plaintiff's condition to be "relatively unchanged" at that time.  (Tr. 151). In the intervening years, Shields had treated his pain with over-the-counter medicines such as Tylenol, and he had one cortisone shot.  (Tr. 151, 100-02, 137).

Meanwhile, the Social Security Administration referred Plaintiff for a consultative examination with Dr. M. Anis Rahman, which was conducted on August 29, 2007. (Tr. 137).  Dr. Rahman noted that Plaintiff had a four-year history of back pain and that Plaintiff complained of intermittent pain over his lower back with radiation towards his right leg, but he had not had surgery and had never been hospitalized for his back

problem. (Id.) Dr. Rahman also noted that there was no tenderness in his lumbosacral spine, and while there were moderate paramuscular spasms, and Shields' straight leg raising was positive at eighty-five degrees on the left side, his straight leg raising was negative on his right side, there were no sensory or motor deficits, his flexion was to eighty degrees, his lateral bending was to forty-five degrees, and his extension was to twenty degrees. (Tr. 38). His deep tendon reflexes were equal and present in both sides, except that both ankle reflexes were absent. (Id.). Dr. Rahman's impression was "[c]hronic lumbosacral strain and left radicular pain." (Id.).

Plaintiff's records were also reviewed by a non-examining physician. (Tr. 139-146). That doctor stated that Shields had been injured at work resulting in a back injury, and described Shields' medical allegation to be a "herniated disc." (Tr. 140). The doctor summarized Dr. Rahman's medical findings described above, and apparently had the relevant medical records. (Tr. 141). The non-examining physician found that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for at least two hours in an eight-hour day, and sit for about six hours in an eight-hour day. (Tr. 140). He found Shields to be limited occasionally in climbing, stooping, kneeling, crouching and crawling, and limited frequently in balancing. (Tr. 141).

As noted above, Shields returned to Dr. Weiner on July 29, 2009. (Tr. 151). At that time Dr. Weiner reported that Shields suffered from "intractable left sciatica" which was "secondary to L5-S1 large left paracentral disc extrusion." (Tr. 151). As he wrote,

> Since I last saw him he remains with similar symptoms. He was never able to return to work until about six months ago when he

started at a light duty job in the meat room of Stop & Shop up to 30 hours per week. The back does stiffen on him standing, but there is no heavy lifting or significant bending or stooping involved. There has been interim treatment since I last saw him. He uses OTC's for flare-ups of the stiffness.

EXAM: This is relatively unchanged and includes an absent left ankle jerk, complaint of paresthesias within the left S1 dermatome and a positive left SLR greater than 80 degrees hip flexion. There are no motor deficits. Lumbar flexion was limited to 70 degrees, secondary to both spasm and radiating pain with the left sciatica.

IMPRESSION: Intractable left sciatica. Neurologic examination remains stable.

ASSESSMENT: I had a lengthy discussion with the Mr. Shield[s]. He understands that prognosis of complete recovery through surgery is poor. He lives with the intractable back and left sciatic radicular pain. He is dealing as best as he can with it at a light duty job.

Mr. Shields, in my opinion, was totally disabled from the date of his injury at work 11/27/2004 until approximately six months ago. He remains with an ongoing partial disability to date. He is capable of light-duty work, but recommended restricted lifting up to 20 pounds, no long term standing, and no recurrent bending or stooping. Diagnosis and the disability are causally related to the injuries sustained at work 11/27/04.

Prognosis of spontaneous recovery is poor. There is still a potential of a future need for surgical intervention.

(Tr. 151-52). Again, Dr. Weiner made no mention of Shields' employment with Auto Zone.

## The ALJ's Decision

The ALJ concluded that during the period from August 22, 2006 to January 6, 2009, Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security

Act.  (Tr. 16).  There is no dispute that the ALJ, in reaching his decision, applied the five-step evaluation required by 20 C.F.R.§ 404.1520.  See Mills v. Apfel, 244 F.3d 1, 2 (1st Cir. 2001) ("[c]omplex regulations, administered by the [Commissioner], prescribe substantive standards and a five-step protocol for making a disability decision."); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (explaining five steps).

At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from August 21, 2006 to January 6, 2009.  (Tr. 10).  At the second step, he determined that Plaintiff suffered from the "severe" impairment of "degenerative disc disease of the lumbar spine" under 20 C.F.R. § 404.1520(c).  (Tr. 11).  At the third step, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 11).  None of these findings is in dispute.  However, as detailed below, Plaintiff challenges the description of his severe impairment.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity ("RFC").  He considered Plaintiff's symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and applicable Social Security Rulings.  (Tr. 11).  He also considered medical opinion evidence in accordance with 20 C.F.R. § 404.1527 and relevant Social Security Rulings, including the opinions of Dr. Weiner and Dr. Rahman, as well as the opinion of the State agency consultant.  (Tr. 11-14).

The ALJ found that Plaintiff's complaints of pain and ongoing disability were inconsistent with the record as a whole. He determined that Plaintiff's medically determinable impairment

> could reasonably be expected to cause some symptoms of the type alleged, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the ... residual functional capacity assessment.

(Tr. 12). In reaching this conclusion, the ALJ reviewed the medical records in detail and concluded that the medical evidence and "claimant's treatment history fails to fully support his complaints and allegation of disability." (Tr. 12-13). The ALJ also concluded that Shields' "activities of daily living also belie the severity of the symptoms alleged" and that his "work history also militates against a finding of disability." (Tr. 13). As detailed, infra, these conclusions are supported by relevant facts.

The ALJ also rejected Dr. Weiner's opinions of September 2006 and July 2009 that Shields was "totally disabled" from gainful employment from the date of his injury in November 2004 to "approximately January 2009." (Tr. 14). As discussed in detail below, the ALJ's decision to reject this opinion evidence is supported by substantial evidence. Finally, the ALJ found that the opinion of the State agency consultant regarding Shields' functional capacity was consistent with the record and adopted those findings. (Tr. 11, 14). Specifically, the ALJ concluded that the State agency consultant's opinion that Plaintiff was able to lift or carry up to ten pounds frequently and twenty pounds occasionally, could sit for at least six hours, and stand or walk for two hours in an

eight hour day, and could only occasionally climb, stoop, kneel, crouch or crawl, was "supported by and . . . consistent with the record as a whole" and, consequently, was "entitled to significant probative weight." (Tr. 14).

At step four, the ALJ determined that in light of the testimony of the vocational expert and Shields' RFC, Plaintiff was no longer able to perform any past relevant work under 20 C.F.R. § 404.1565. (Tr. 14). However, at step five, the ALJ determined that in accordance with 20 C.F.R. § 404.1569 and 404.1569(a), and after consideration of Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed from August 21, 2006 through January 26, 2009. (Tr. 15). Therefore, the ALJ determined that the Plaintiff was "not disabled." (Tr. 15-16).

Additional facts will be provided below where appropriate.

### III. ANALYSIS

#### A. Standard of Review

Plaintiff is seeking judicial review of the Commissioner's "final decision" pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g) ("the Act"). The Act provides, in relevant part, that:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action .... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehear-

ing.  The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive ....

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  It has been explained that:

> In reviewing the record for substantial evidence, we are to keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary."  The Secretary may (and, under his regulations, must) take medical evidence.  But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.  We must uphold the Secretary's findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  Thus, the "court's function is a narrow one limited to determining whether there is substantial evidence to support the Secretary's findings and whether the decision conformed to statutory requirements."  Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981).  The Commissioner's decision must be affirmed, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial

evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (citation omitted). "Even in the presence of substantial evidence, however, the Court may review conclusions of law . . . and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" Musto v. Halter, 135 F. Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)) (additional citations omitted).

Applying these principles to the instant case compels the conclusion that the Commissioner's final judgment denying benefits must be affirmed.

## B.    **Statutory Framework**

The burden is on Plaintiff to prove that he is disabled in order to establish his right to disability insurance benefits. See Bowen v. Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2287, 2293-94, 96 L. Ed. 2d 119 (1987).[4] "Disability" is defined as:

> [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ....

42 U.S.C. § 423(d)(1)(A). The Act further provides that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

---

[4] It is undisputed that, although the claimant continues to have the burden of proving disability at the last stage of the 5-step analysis, the burden of going forward with evidence that work exists in significant numbers in the national economy that the claimant can do shifts to the Social Security Administration. (See Tr. 10). This was done in the instant case and neither the burden of proof nor the burden of production is at issue.

considering his age, education, and work experience, engage in any
other kind of substantial gainful work which exists in the national
economy ....

42 U.S.C. § 423(d)(2)(A).

As detailed above, to implement this definition of disability, a "five-step sequential inquiry into whether or not an applicant for benefits should be considered 'disabled' and thus eligible for benefits" is applied in accordance with 20 C.F.R. § 404.1520. McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 (1st Cir. 1986). In the instant case, the Plaintiff is challenging the ALJ's assessment of his RFC and the related determination at step 5 that given Shields' RFC, age, education and work experience, he is capable of performing other work and is not disabled. See Seavey, 276 F.3d at 5; 20 C.F.R. § 404.1520(a)(4)(v). As detailed herein, this finding is supported by substantial evidence.

C.      **The ALJ's Rejection of the Treating Physician's Opinion**

Plaintiff argues that the ALJ erred in rejecting the treating physician's opinions and substituting his own judgment for the uncontroverted opinions of the treating physician. For the reasons that follow, this court finds that the ALJ properly evaluated the opinions of Dr. Weiner.

Generally, the ALJ should "give more weight to a source who has treated the claimant as a patient or examined the person . . . because 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" Monroe v. Barnhart, 471 F. Supp. 2d 203, 211 (D. Mass. 2007) (quoting 20 C.F.R. § 404.1527(d)(2)). However, "[t]he law in this circuit does not *require* the ALJ to give greater weight to the opinions of treating physicians." Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir.1991) (emphasis added). The ALJ may "downplay the weight afforded a treating physician's assessment of the nature and severity of an impairment where ... it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and nonexamining physicians." Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) (citing 20 C.F.R. §§ 404.1527(d)(2)-(4) & 416.927(d)(3)-(4)). "Although opinions from treating and examining physicians may be considered helpful, and in many cases controlling, the hearing officer is only required to make a decision that is supported by substantial evidence." Monroe, 471 F. Supp. 2d at 211 (citing Rodriguez, 647 F.2d at 222-23). The ALJ may reject the opinion of the treating physician so long as an explanation is provided and the contrary finding is supported by substantial evidence. See id. Finally, the ALJ is "not required to accept the conclusions of claimant's treating physicians on the ultimate issue of disability." Arroyo, 932 F.2d at 89.

The ALJ explained that he was rejecting Dr. Weiner's opinions due to specific inconsistencies between Dr. Weiner's opinions and the record. (Tr. 14). In particular, the ALJ rejected Dr. Weiner's opinion of September 2006 that Shields was "totally

disabled from gainful employment" because it addressed the "ultimate issue of disability," which was to be decided by the Commissioner and the ALJ. (Tr. 14). Moreover, the ALJ found that Dr. Weiner failed to provide "a description of discrete functional limitations arising out of the claimant's lumbar impairment," that his opinion was "overly broad" and that it was "not supported by or consistent with the record as a whole[.]" (Id.). The ALJ rejected Dr. Weiner's July 2009 opinion that Shields was disabled from the date of his injury until "approximately January 2009" as being inconsistent with the fact that Shields had worked from November 2004 to August 2006. (Tr. 14). Moreover, the ALJ found that this conclusory opinion was not consistent with the fact that Shields had not sought consistent treatment during this period, and was not supported by objective findings. (Id.). As the record revealed, Shields had had very little medical treatment for his condition, and was able to perform activities of daily living, facts which Dr. Weiner simply ignored. (See Tr. 13).

In short, the ALJ adequately explained his decision not to give significant weight to Dr. Weiner's opinion. Moreover, there were glaring problems with these overly broad opinions which, on a very fundamental level, failed to address the fact that Shields had worked during the period Dr. Weiner found him to be disabled and failed to address Dr. Weiner's own conclusion that, as of January 2009, Shields was capable of light duty work with restrictions of "lifting up to 20 pounds, no long term standing, and no recurrent bending or stooping," although his physical condition had not apparently changed. (Tr. 151-52). Moreover, Dr. Weiner failed to address how or why the claimant was no longer

disabled as of January 2009 and able to return to work at that time.  In contrast, the medical evidence from Dr. Rahman and the non-examining physician indicated that Shields was not totally disabled, as did Dr. Weiner's recent assessment which could be applied to Plaintiff's status from August 21, 2006 through January 6, 2009 since his condition had not changed.  "A treating physician's conclusions regarding total disability may be rejected by the Secretary especially when, as here, contradictory medical advisor evidence appears in the record."  Keating v. Sec'y of  Health & Human Servs., 848 F.2d 271, 276 (1st Cir. 1988) (citations omitted).  Because the ALJ supported his rejection of the treating physician's opinions with express references to specific inconsistencies between the opinions and the record, the ALJ's decision not to grant Dr. Weiner's opinions significant probative weight was not improper.

### D.    Alleged Factual Errors

Shields takes issue with various aspects of the ALJ's recitation of the facts.  His principle contention is that the ALJ allegedly ignored the findings of the MRI and EMG, and reached a conclusion that was fundamentally inconsistent with the objective medical findings.  Perhaps the simplest rebuttal to this argument is the fact that Dr. Weiner, despite giving lip service to the Plaintiff being totally disabled, did find that he could perform light duty work even with his medical condition.  The objective medical evidence did not require a finding of total disability.

Moreover, the ALJ did not ignore the MRI and EMG findings, but rather expressly referenced them.  (Tr. 12).  In fact, he reviewed all of the medical records in detail.  (Tr.

12-13).  The Plaintiff's claim that the ALJ ignored objective medical evidence is not supported by the record.

The Plaintiff also challenges the ALJ's description of his condition as being a "degenerative disc disease of the lumbar spine."  (Tr. 11).  The ALJ did use this generalized description in finding that the claimant met the step 2 requirement that he have a severe medically determinable impairment that caused significant limitations in the claimant's ability to perform basic work activities.  (Tr. 9, 11).  As an initial matter, the Plaintiff does not dispute that he had a severe, medically determinable, impairment of his back.  Moreover, the ALJ's decision is clear that he considered all of the medical records, and understood the Plaintiff suffered from a disc impingement on the S1 nerve root.  Thus, he cited to the fact that the "MRI showed a transitional S1 vertebra, an L5-S1 disc extrusion impinging upon the traversing left S1 nerve root, and along with facet degeneration it caused moderate central canal stenosis," and that the EMG "indicated a proximal process affecting the left S1 root, with no evidence of active or chronic neurogenic changes in the left S1 myotome."  (Tr. 12; see also Tr 13 (describing all of Plaintiff's medical records)).  There is no merit to the claim that the ALJ misconstrued Shields' medical records.

The Plaintiff also challenges the ALJ's statement describing Shields' work history following his 2004 injury.  As the ALJ described Plaintiff's work history:

> The claimant's work history also militates against a finding of disability.  The workplace injury giving rise to the claimant's back impairment occurred in November 2004, but he was able to continue working at his prior construction job (described as "very heavy"

work by the vocational expert at hearing) until late 2005 when he began working at an auto parts store (Exhibit 5D). The claimant worked at the auto parts store (a job performed at the "medium" exertional level, according to the vocational expert) until August 2006 (Exhibit 8F). During 2005 and 2006 the claimant appears to have engaged in substantial gainful activity (Exhibits 4D and 5D). He never attempted work at a lighter level of exertion, and at the end of the closed period of disability which he alleges he returned to work ("because I had to") at a light exertional level. This history does not provide a basis for a conclusion that he was incapable of all work – even sedentary or light work – during the period under adjudication.

(Tr. 13). The Plaintiff takes exception to the ALJ's statement that he returned to his construction job until late 2005. To the extent that there was an error in this recitation of facts, it was irrelevant.

As noted above, the information Shields provided to the ALJ by way of written submission and oral testimony about when and for how long he returned to the construction company after being injured, and when he went to work at Auto Zone, was inconsistent at best. The record is clear, however, that he worked for at least a year at Auto Zone at a job that involved standing, and that he returned to work in 2009 to another job involving standing, without any explanation or evidence of a changed condition. There is ample record support for the ALJ's conclusion that the Plaintiff's work history "does not provide a basis for a conclusion that he was incapable of all work – even sedentary or light work – during the period under adjudication." (Tr. 13). See, e.g., Berger v. Astrue, 516 F.3d 539, 546 (7th Cir. 2008) ("Although the diminished number of hours per week indicated that [plaintiff] was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled.").

-19-

In sum, none of the Plaintiff's objections to the ALJ's factual findings warrants reversal of his decision.

### E.    ALJ's Evaluation of Plaintiff's Complaints

The Plaintiff also argues that the ALJ failed to appropriately consider his complaints of pain, and to account for the limitations imposed on his ability to work due to the pain.  A review of the record establishes, however, that the ALJ's determination was amply supported by the record.

The ALJ considered Plaintiff's complaints of pain, but ultimately concluded that:

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause some symptoms of the type alleged, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 12).  See 20 C.F.R. §§ 404.1529(b) and (c).

As a general statement, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings"  Frustaglia v. Sec'y of Human Health & Human Servs., 29 F.2d 192, 195 (1st Cir. 1987) (citing DaRosa v. Sec'y of Human Health & vServs., 803 F.2d 24, 26 (1st Cir. 1986)).  Where the ALJ finds Plaintiff not to be credible, he must support his inferences "by specific reference to the evidence in the record."  Valiquette v. Astrue, 498 F. Supp.

2d 424, 433 (D. Mass. 2007). See also Guyton v. Apfel, 20 F. Supp. 2d 156, 166 (D.

Mass. 1998). He did so in the instant case.

In assessing credibility, the "regulations recognize that a person's symptoms

may be more severe than the objective medical evidence suggests. See 20 C.F.R.

§ 404.1529(c)(3). Therefore, the regulations provide six factors (known as the Avery

factors) that will be considered when an applicant alleges pain." Makuch v. Halter,

170 F. Supp. 2d 117, 126 (D. Mass. 2001) (internal punctuation omitted). These are:

> (1) the nature, location, onset, duration, frequency, radiation, and
> intensity of pain; (2) any precipitating or aggravating factors; (3) the
> type, dosage, effectiveness, and adverse side effects of any pain
> medication; (4) any treatment, other than medication, for the relief of
> pain; (5) any functional restrictions; and (6) the claimant's daily
> activities.

Rohrberg v. Apfel, 26 F. Supp. 2d 303, 308 (D. Mass. 1998) (citing Avery, 797 F.2d at

29). While the ALJ must consider each of these factors, there is no requirement that he

make specific findings regarding each of the factors in his written decision. See 20

C.F.R. § 404.1529(c)(3) (listing Avery factors as factors that the Commissioner "will

consider" in evaluating subjective complaints of pain and other symptoms); Social

Security Ruling 96-7P, 1996 WL 374186, at *3 (S.S.A.) (listing Avery factors among

evidence "that the adjudicator must consider in addition to the objective medical evidence

when assessing the credibility of an individual's statements"). See also Rand v. Barnhart,

357 F. Supp. 2d 361, 368 (D. Mass. 2005) ("While it may be argued that it would have

been more helpful for the hearing officer explicitly to outline the *Avery* factors in making

his credibility determination, it is sufficiently clear from the record that he thoroughly

questioned [the claimant] according to those guidelines at the hearing[.]").  The ALJ in the instant case fulfilled his obligation to consider these factors.

For example, but without limitation, in addition to reviewing the medical evaluations, the ALJ addressed Plaintiff's treatment history — noting that there were only sporadic visits to the doctor, Plaintiff used over-the-counter medicine to control pain with the exception of one epidural injection, and there had not been any surgical intervention. (Tr. 13).  These factors were appropriately considered by the ALJ.  See Ortiz, 955 F.2d at 769 (holding that lack of treatment conflicting with claimant's complaints of ongoing pain was proper a consideration).

The ALJ also found that Plaintiff's activities of daily living did not support his complaints of disability.  He focused on Plaintiff's testimony indicating that he lived alone, was able to visit a friend's house daily, perform light cleaning, and drive an automobile.  (Tr. 13).  Plaintiff argues that the ALJ improperly ignored the Plaintiff's testimony that he required the assistance of his mother in order to do laundry and get groceries.  Although Plaintiff may have required some assistance performing his daily activities, the fact remains that he was able to perform a range of activities by himself. Furthermore, the fact that the ALJ did not mention Plaintiff's need for assistance to perform all of his daily activities does not constitute reversible error.  While it is true that the ALJ is required to consider all of the evidence, there is no requirement that he directly address every piece of evidence. See DaSilva-Santos v. Astrue 596 F. Supp.2d 181, 188 (D. Mass. 2009) (citation omitted).

The record belies Plaintiff's contention that the ALJ did not consider the limitations on his ability to work caused by pain. The ALJ noted that Shields was not able to perform the full range of light work and that there were additional limitations which were considered by the vocational expert and the ALJ. (Tr. 15). He also considered Plaintiff's contention that he had to lie down in the morning and afternoon to relieve the pain. (Tr. 12). Moreover, the ALJ considered the tasks that Plaintiff actually performed at Auto Zone, as well as at the supermarket where he is required to do a lot of standing. (Tr. 11-12, 23-24, 31-32). In short, the ALJ appropriately considered the relevant factors. The court "must uphold" the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez, 647 F.2d at 222. For all these reasons, the ALJ's decision must be affirmed.

## IV. CONCLUSION

For all the reasons detailed herein, this court finds that the Commissioner's decision that Plaintiff was not "under a 'disability' as defined in the Social Security Act" was supported by substantial evidence. Therefore, "Plaintiff's Motion for Judgment on the Pleadings" (Docket No.14) is DENIED, and "Defendant's Motion for Order Affirming Decision of the Commissioner" (Docket No. 16) is ALLOWED.

    / s / Judith Gail Dein

Judith Gail Dein
United States Magistrate Judge
